## RECORD NO. 13-2237

In The

# United States Court Of Appeals
## For The Fourth Circuit

# LAWRENCE HAWTHORNE,

*Plaintiff – Appellant,*

v.

# VIRGINIA STATE UNIVERSITY;
# THOMAS LAROSE, Individually and in his official capacity as Chairperson of the Arts Department of Virginia State University,

*Defendants – Appellees,*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
AT RICHMOND

————————

## BRIEF OF APPELLANT

————————

**Josephine S. Miller**
LAW OFFICE OF
  JOSEPHINE SMALLS MILLER
**914 Main Street**
**Suite 206**
**East Hartford, CT 06108**
**(203) 512-2795**

**Samuel H. Woodson, III**
LAW OFFICE OF
  S. H. WOODSON, III
**431 North Lee Street**
**Alexandria, VA 22314**
**(703) 548-1948**

*Counsel for Appellant*        *Counsel for Appellant*

GibsonMoore Appellate Services, LLC
421 East Franklin Street ♦ Suite 230 ♦ Richmond, VA 23219
804-249-7770 ♦ www.gibsonmoore.net

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. 13-2237     Caption: Lawrence Hawthorne v. Virginia State University

Pursuant to FRAP 26.1 and Local Rule 26.1,

Lawrence Hawtorne
(name of party/amicus)

S. Howard Woodson, III

who is    Counsel for Appellant   , makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity? ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations? ☐ YES ☑ NO
     If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☐ YES ☑ NO
     If yes, identify all such owners:

     - 1 -

4.    Is there any other publicly held corporation or other publicly held entity that has a direct
      financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐ YES ☑ NO
      If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐ YES ☑ NO
      If yes, identify any publicly held member whose stock or equity value could be affected
      substantially by the outcome of the proceeding or whose claims the trade association is
      pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐ YES ☑ NO
      If yes, identify any trustee and the members of any creditors' committee:

Signature: _____    Date: _____11/04/2013_____

Counsel for: Appellant _____

## CERTIFICATE OF SERVICE
***************************

I certify that on _____11/04/2013_____ the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

_____        _____11-04-2013_____
        (signature)                          (date)

- 2 -

# TABLE OF CONTENTS

**PAGE:**

TABLE OF AUTHORITIES .................................................................... iii

JURISDICTIONAL STATEMENT ..........................................................1

STATEMENT OF THE ISSUE.................................................................1

STATEMENT OF THE CASE..................................................................1

    A.    Nature of the Case ................................................................1

    B.    Course of Proceedings..........................................................1

    C.    Disposition Below ................................................................2

STATEMENT OF THE FACTS ................................................................2

SUMMARY OF ARGUMENT .................................................................3

ARGUMENTS ........................................................................................3

    STANDARD OF REVIEW ..............................................................3

    DISCUSSION.................................................................................4

    A.    The Jury Is Not Required to Believe that LaRose Had No Role in the Decision To Select Hawthorne for Termination ........................4

    B.    Hawthorne presented sufficient evidence from which a jury could Reasonably determine that LaRose provided racially discriminatory Input into the termination decision ..............................9

CONCLUSION .....................................................................................13

STATEMENT REGARDING ORAL ARGUMENT ............................13

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**PAGE(S):**

**CASES:**

Anderson v. Liberty Lobby, Inc.,
    411 U.S. 242 (1986)............................................................................4, 8

Castaneda v. Partida,
    430 U.S. 482 (1977)..............................................................................10

EEOC v. Sears Roebuck & Co.,
    243 F.3d 846 (4th Cir. 2001) ...............................................................11

Hill v. Lockheed Martin Logistics Mgmt, Inc.,
    354 F.3d 277 (4th Cir. 2004) ..............................................................4, 8

Lytle v. Household Mfg., Inc.,
    494 U. S. 545 (1990) ..............................................................................8

Oncale v. Sundowner Offshore Services,
    523 U.S. 75 (1998)................................................................................10

Price v. Thompson,
    380 F.3d 209 (4th Cir. 2004) ...............................................................11

Reeves v. Sanderson Plumbing Products, Inc.,
    530 U.S. 133 (2000)....................................................................4, 6, 8, 11

Staub v. Proctor Hospital,
    131 S. Ct. 1186 (2011)..........................................................................11

Tuck v. Henkel Corp.,
    973 F.2d 371(4th Cir. 1992) ..................................................................9

**STATUTES:**

28 U.S.C. § 1291 ....................................................................................1

42 U.S.C. § 1981 ....................................................................................1

**OTHER:**

Wright & A. Miller,
  Federal Practice and Procedure § 2529 (2d ed. 1995)....................................8

## STATEMENT OF APPELLATE JURISDICTION

Jurisdiction is proper before this Court under 28 U.S.C. § 1291. The United States District Court for the Eastern District of Virginia entered final judgment in this matter, and Hawthorne timely Notice of Appeal to this Court. (Joint Appendix ["JA"] 371-372).

## STATEMENT OF THE ISSUE

1.    Whether the District Court committed reversible error when it dismissed Plaintiff Hawthorne's claims of discrimination and retaliation on motion for summary judgment?

## STATEMENT OF CASE

### A.    Nature of the Case

The Plaintiff-Appellant, Lawrence Hawthorne ("Hawthorne") is a black, male who was employed by the Virginia State University ("VSU") as an assistant professor in the Department of Music, Art & Design.   He claims racial discrimination and retaliation by his employer and Dr. Thomas LaRose in violation of 42 U. S. C. § 1981.

### B.    Course of Proceedings

On December 19, 2011, Hawthorne filed a complaint in U.S. District Court for the Eastern District of Virginia.  The complaint alleged causes of action in race discrimination and retaliation.

C.    **Disposition Below**

On February 27, 2013, Defendants VSU and LaRose filed a motion for summary judgment. That motion was granted on August 9, 2013. Plaintiff then filed a notice of appeal to this court.

## STATEMENT OF FACTS

Lawrence Hawthorne was employed by Virginia State University beginning in January 1999. He was employed in the Music, Art & Design Department as a sculpture instructor. He eventually reached the rank of assistant professor. [JA 78] Hawthorne was actively involved in the Art Department including service on the Faculty Senate. He was the "go to" person when working on the accreditation report that was submitted to NASAD in 2003. [JA 78] He was responsible for the writing of portions of the Self-Study Report for the Department including NASAD concerns from the 2008 Accreditation Visit. Hawthorne helped to revise the NASAD report that was originally submitted by LaRose. [JA 78]

Hawthorne fared well in the Art Department while Dr. Mark Phillips was Chair. He received mostly outstanding performance evaluations. [JA 79] However, once Dr. Thomas LaRose became Chair of the Department, Hawthorne received an outstanding for his first evaluation but things went downhill after that time. Thereafter LaRose rated Hawthorne poorly.

Initially Hawthorne saw the reduction of African-American faculty by Dr. LaRose as something that was "not his issue". However, on May 3, 2010 he was given a terminal contract by Dr. Hill and told that it was because of exigent budgetary circumstances that his employment was being ended. [JA 79] Hawthorne and Brenda Mveng, the only two remaining African-American faculty in the Art & Design Department, were chosen for layoff. At the conclusion of the 2010/2011 school year, Hawthorne's employment in the VSU Art Department was ended. He then filed the current employment discrimination lawsuit.

## SUMMARY OF ARGUMENT

The District Court erred in dismissing the complaint of Hawthorne when it failed to properly consider his direct and circumstantial evidence of discriminatory motivation by Dr. LaRose regarding the complexion of members of the art and design department. Further, Hawthorne was not given the required viewing of the evidence in the light most favorable to him. The Court improperly credited the testimony of Defendants' witnesses in determining that LaRose had no input into the decision to terminate Hawthorne's employment contract.

## ARGUMENTS

## STANDARD OF REVIEW

The district court's grant of summary judgment is reviewed based upon a de novo standard of review, construing the evidence and any inferences in the light

most favorable to the non-moving party. <u>Hill v. Lockheed Martin Logistics Mgmt,</u>

<u>Inc.</u>, 354 F.3d 277, 283 (4th Cir. 2004); <u>Anderson v. Liberty Lobby, Inc.</u>, 411 U.S.

242, 255 (1986).

## DISCUSSION

Contrary to the holding of the trial court, not only did someone "overhear"

Provost Weldon Hill state that Dr. LaRose was a racist, there was direct testimony

from a disinterested third party witness that she asked a direct quest to Dr. Hill

regarding how an HBCU ( historically black college and university) could allow an

African-American faculty in the art department was permitted to be treated in the

way that she was.  The witness had just attended a meeting about the evaluation

that Assistant Professor Brenda Mveng-Whitted had received.  Dr. Hill replied that

"we all know he's (Dr. LaRose) a racist".  [JA 217]

A.    <u>The Jury Is Not Required to Believe that LaRose Had No Role in the
      Decision To Select Hawthorne for Termination</u>

This court may not make credibility determinations or weigh the evidence

and must disregard all evidence favorable to the moving party that the jury is not

*required to believe*. <u>Reeves v. Sanderson Plumbing Prods. Inc.</u>, 530 U.S. 133, 150-

51 (2000).

The trial court erred when it accepted at face value to bald assertion that Dr.

LaRose played no role whatsoever in the decision to terminate the employment

4

contract of Hawthorne.   The court reached the conclusion that Hawthorne presented "no evidence" of involvement by LaRose in his termination.

Yet, Hawthorne did present evidence, which if credited by a jury, could have been sufficient to reach a finding that he was part of the scheme of LaRose to rid the art and design department of African-American faculty in order to make way for Caucasians.

Firstly, Hawthorne presented evidence that LaRose had a self-professed desire to rid the art and design department of faculty that he deemed unworthy to be there and to replace them with those of his own choosing.  LaRose confided in Brenda Mveng that he had figured out how he was going to get rid of Fransis Young, an African-American art faculty. [JA 83; ¶¶ 5-9]  LaRose terminated the employment of an African-American male art instructor because he wanted to give the job to someone else that he had in mind.  [JA 100]  LaRose did not articulate any performance related reasons for terminating Young or Branch. [JA 101; ¶ 8] Indeed, he informed Branch that "he did not need the job and that LaRose knew someone who did need the job". [JA 100]   LaRose replaced Branch with a Caucasian instructor. [JA 101; ¶ 10] LaRose also set out to destroy the reputation of Mveng to the point that she has been removed from teaching all courses within the art and design department. [JA 84, ¶ 10, 15-16] After assigned Mveng courses outside her discipline, he then gave those courses to Caucasian instructors. [JA 84,

¶ 17]  As a consequence of LaRose's recommendations, Mveng has been relieved of reaching any classes within the art and design department.  [JA 87, ¶¶ 35-37, 41]

Secondly, Hawthorne presented evidence that LaRose was responsible for recommending that other African-American art faculty contracts not be renewed. LaRose threatened to recommend that Young's contract not be renewed thus causing her to end her employment. She further testified that falsified and embellished statements against her. [JA 96]  He recommended the terminal contract for Mveng, though she ultimately remained employed.

The foregoing evidence is sufficient basis for finding that a reasonable jury would not be *required to believe* that LaRose had no part to play whatever in the decision to terminate Hawthorne.  Indeed, evidence supporting LaRose and Virginia State should be disregarded unless it is "uncontradicted and unimpeached, at least to the extent that the evidence comes from disinterested witnesses." Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 151, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000).

Thirdly, Hawthorne presented evidence that LaRose began a plan to cleanse the art and design department and to replace the African-Americans with Caucasians. LaRose replaced Young with Evelyn Davis, a Caucasian female. Evelyn Davis left after one year and was replaced with another Caucasian female Ann Ford.  [JA 83, ¶ 9] Ford continues to be employed in the department to this

day.  [JA 135] Notably Ford and Meena Khalili Clifford (both non-African-American) were hired "in tenure track positions".  [JA 135; JA 92, ¶ 8]  By contrast there is one African American Instructor in the Department who has served as an Adjunct for several years.  In spite of his experience and his commitment, he has not been awarded a permanent tenure track position while the new White hires have been given preference over him.  [JA 92-93; JA 117, ¶12]

Fourthly, LaRose applied a different standard of qualifications to Caucasian and African-American faculty.  The VSU Faculty Handbook states that adjunct faculty are "those individuals who meet established academic criteria, have appropriate higher education credentials, and engage in part-time teaching." [JA 111]  At least two Caucasian faculty members were hired as adjuncts who had no academic degrees at all.  These are Phil Nesmith who teaches Photography and Kim Coulton who teaches Pottery. [JA 92, ¶ 9]  Dr. LaRose has been permitted to change the academic criteria for adjunct faculty members who are Caucasian even when it violates established written policy.  Yet at least one African-American art faculty, Mveng was disallowed teaching any art and design classes even when she had previously acted for years at the department coordinator.  [JA 83, ¶ 4]

It is not required that Hawthorne establish that *all* African-Americans were eliminated from the department.  A material issue of fact is created by the fact that LaRose went out of his way to bring instructors into the art and design department

who had no academic degree at all while removing competent African-American faculty who did have degrees such as Young, Mveng, Branch and Hawthorne, even when he had no performance based problems with them. [JA 92-93, ¶ 9]  With this factual background, a reasonable jury could disbelieve the claims of LaRose that he played no part in the decision to terminate Hawthorne's.

The district court erred in refusing to view the evidence in the light most favorable to Hawthorne as it was required to do.  Construing the evidence and any inferences in the light most favorable to the non-moving party. <u>Hill v. Lockheed Martin Logistics Mgmt, Inc.</u>, at 283; <u>Anderson v. Liberty Lobby, Inc.</u>, at 255.

The task of the court in ruling on a summary judgment motion has been further refined as follows:

> The court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence.  <u>Lytle v. Household Mfg., Inc.</u>, 494 U. S. 545, 554-555 (1990)…. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." <u>Liberty Lobby</u>, *supra*, at 255. Thus, although the court should review the record as a whole, it ***must disregard all evidence*** favorable to the moving party that ***the jury is not required to believe***.  <u>See</u> <u>Wright & A. Miller</u>, Federal Practice and Procedure § 2529, 299 (2d ed. 1995). That is, the court should give credence to the evidence favoring the nonmovant as well as that "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, at 150.

**B.** <u>Hawthorne presented sufficient evidence from which a jury could Reasonably determine that LaRose provided racially discriminatory Input into the termination decision</u>

It is a material question whether LaRose influenced the decision to recommend Hawthorne be one of those terminated. This circuit has expressly rejected

> "the proposition that a fired employee cannot rely on demonstrating the prejudice of a supervisor who is not the ultimate decisionmaker to prove that discrimination motivated the employer's termination decision." <u>Id.</u> at 377 n. 6. Instead, we said that the relevant question is whether the supervisor had actually influenced the decision to fire the plaintiff. In reversing a summary judgment for the employer, we noted that the plaintiff had "present[ed] some probative evidence that [his] former supervisor . . . was biased against older workers and that [the supervisor] influenced the decision to fire [him]." As a result, we held that whether the supervisor had actually influenced the decisionmakers was "an open [factual] question" that would have to be decided by a jury. <u>Tuck v. Henkel Corp.</u>, 973 F.2d 371, 376-77 (4th Cir. 1992)
> <u>Id.</u> at 377. P. 669

The district court should have determined that whether LaRose actually influenced the decision of Dr. Hill to terminate Hawthorne. The trial court acknowledged that there was a faculty "divided along racial lines" it then proceeded to ignore the importance of that fact. [MOD at page1] Dr. LaRose was at the epicenter of this "racial divide" and thus reasonable jurors could believe that he operated the art and design department in that manner and did not shrink from expressing his opinion regarding who should remain in the department. [JA 117, ¶¶ 6, 8-10]

9

Evidence presented by Hawthorne was that despite Hill's acknowledgment that he recognized Dr. LaRose to be a "racist" Hill simply shrugged it off when queried about why he would allow such ill treatment of an African-American art faculty member. [JA 98, ¶7]  The inaction by Hill underscores the wise counsel of the Supreme Court that no presumption can be made that people of the same race will not engage in racial discrimination against members of their own group. Oncale v. Sundowner Offshore Services, 523 U.S. 75 (1998) ("[I]n the related context of racial discrimination in the workplace this Court has rejected any conclusive presumption that an employer will not discriminate against members of his own race.) Castaneda v. Partida, 430 U.S. 482, 499 (1977).

All evidence confirms that Dr. LaRose is a forceful character who ruled his roost with an iron will.  Admittedly, LaRose recommended the termination of Mveng who initially received a terminal contract on the exact same date as Hawthorne.  [JA 72, JA]  Of the art and design faculty only Hawthorne and Mveng received notice of termination. [JA 79, ¶13]  If indeed a conversation was held between LaRose and Hill about whom to terminate because of alleged budget reasons, it strains credulity that LaRose was not asked to make a recommendation regarding any faculty who should at least be considered for termination.  It is not likely that Hill asked LaRose for only one recommendation for termination when he expected to terminate two.

Recent precedent of the United States Supreme Court regarding employment actions holds that where the supervisor performs an act motivated by [discriminatory] animus, that act is the proximate cause of the adverse employment action even though the ultimate decision is made by someone else. Cf. Staub v. Proctor Hospital, 131 S. Ct. 1186 (2011) (Decision-maker's exercise of judgment does not prevent the earlier agent's discriminatory animus from being a proximate cause of the harm).

A plaintiff may prove pretext by demonstrating that the defendant's explanation is "unworthy of credence" or by offering circumstantial evidence sufficiently probative of the issue of discrimination or retaliation. See Reeves v. Sanderson Plumbing Prods., Inc., at 148; Price v. Thompson, 380 F.3d 209, 212 (4th Cir. 2004); EEOC v. Sears Roebuck & Co., 243 F.3d 846, 853-54 (4th Cir. 2001).

Hawthorne presented circumstantial evidence that LaRose in all probability provided input regarding his receipt of a terminal contract. Everything else regarding how LaRose conducted himself points to at least input into the decision. Given Hill's acknowleged lack of concern regarding possible racial discriminatory animus by LaRose, his statement of sole decision-making should have been left to the rigorous fact-finding function of a jury.

11

An independent third party, former Chair of the faculty senate Zoe Spencer testified that based upon her interaction, "the perception displayed by Dr. Larose and other white faculty is that African-Americans at the university are not as capable as whites to hold positions and manage the affairs of the University." [JA 116-119]  Spencer had opportunity in her role as Chair of the Faculty Senate to observe LaRose's interactions with Blacks and Whites.  She prophetically warned Provost Dr. Hill and President Dr. Miller that lawsuits might be the result of a failure to reign in LaRose and others who were fomenting racial tensions on campus.  [JA 123-124]

Finally, Hawthorne was selected for termination when there are two adjunct professors who are teaching the courses that Hawthorne  previously taught (i.e. ceramics and sculpture)  One is Kim Colton (Caucasian) who has only been employed at the university since 2009 and another who was been hired since he left. [JA 92-93, ¶ 9]  Even new disciplines were added to the department after termination of Hawthorne, something that is inconsistent with claims of financial exigency. [JA 79]

Hawthorne was entitled to the benefit of the inferences, coupled with the direct evidence of a campaign of conduct by LaRose to "color" the art and design department to his own choosing.  His racially motivated faculty decisions should not have been dismissed when examining the evidence of the decision to terminate Hawthorne.

## CONCLUSION

For all of the foregoing reasons the Plaintiff-Appellant prays that this court reverse the ruling of the District Court and permit the restoration of the complaint of Hawthorne to the docket.

## STATEMENT REGARDING ORAL ARGUMENT

The Appellant asserts that the issues raised herein may be more fully developed through oral argument, and respectfully requests the same.


DATE: January 9, 2014                    Respectfully submitted,

                                         BY: */s/  Josephine S. Miller*
                                         Josephine S. Miller
                                         Federal Bar # 27039
                                         914 Main Street, Suite 206
                                         East Hartford, CT  06108
                                         Tel:  (203) 512-2795
                                         Fax: (860) 289-8944
                                         Email:  jmillerlaw@sbcglobal.net

                                         *Counsel for Appellant*

**CERTIFICATE OF COMPLIANCE WITH RULE 32(a)**
**Certificate of Compliance with Type-Volume Limitation,**
**Typeface Requirements, and Type Style Requirements**

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

> this brief contains <u>2,799</u> words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

> this brief has been prepared in a proportional spaced typeface using <u>Microsoft Word</u> in <u>14 point Times New Roman</u>.

<u>/s/Josephine S. Miller</u>
Josephine S. Miller

Dated: January 9, 2014

# CERTIFICATE OF FILING AND SERVICE

I hereby certify that on January 9, 2014, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

Ronald N. Regnery
OFFICE OF THE
  ATTORNEY GENERAL OF VIRGINIA
900 East Main Street
Richmond, VA  23219
(804) 786-5632

*Counsel for Appellees*

The necessary filing and service were performed in accordance with the instructions given to me by counsel in this case.

/s/ Shelly N. Gannon
Shelly N. Gannon
GIBSON MOORE APPELLATE SERVICES, LLC
421 East Franklin Street
Suite 230
Richmond, VA  23219